O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-0174 AHM (RCx) | Date | February 3, 2010 |
|---|---|---|---|
| Title | VIZIO, INC. v. FUNAI ELECTRIC CO., LTD. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:   Attorneys **NOT** Present for Defendants:

**Proceedings:**   IN CHAMBERS (No Proceedings Held)

## I.   INTRODUCTION

Plaintiff Vizio, Inc. ("Vizio") and Defendant Funai Electric Co., Ltd. ("Funai") have been involved in ongoing patent litigation in this Court and other tribunals regarding certain digital television technology.  In the coordinated patent litigation before this Court, Case Nos. CV06-5355 AHM (RCx), CV07-0254 AHM (RCx) and CV07-0274 AHM (Rcx) (the "Consolidated Cases"), Funai is a plaintiff and has alleged that Vizio and others have committed patent infringement.  On February 12, 2009, Vizio filed its Complaint in this case, alleging a number of antitrust, contract, and tort causes of action against Funai.  On June 3, 2009, this Court granted Funai's motion to coordinate this case and the related patent cases, but denied Funai's motion to stay this antitrust case along with the patent cases.  On July 20, 2009, Vizio filed its First Amended Complaint ("FAC"), pursuant to a stipulation to amend.  The FAC alleges eleven causes of action arising from federal and state antitrust law and state tort and contract law.[1]  On August 7,

---

[1] These claims are for: (1) unlawful acquisition in violation of Section 7 of the Clayton Act; (2) unlawful conspiracy in violation of Section 1 of the Sherman Antitrust Act; (3) unlawful monopolization in violation of Section 2 of the Sherman Antitrust Act; (4) unlawful attempt to monopolize in violation of Section 2 of the Sherman Antitrust Act; (5) unlawful conspiracy to monopolize in violation of Section 2 of the Sherman Antitrust Act; (6) unlawful conspiracy in violation of California's Cartwright Act; (7) California statutory unfair competition; (8) breach of contract; (9) intentional interference with contract; (10) intentional interference with prospective economic advantage; and (11) declaratory and injunctive relief.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0174 AHM (RCx) | Date | February 3, 2010 |
|---|---|---|---|
| Title | VIZIO, INC. v. FUNAI ELECTRIC CO., LTD. | | |

2009, Funai moved to dismiss Vizio's suit for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the following reasons, the Court GRANTS IN PART AND DENIES IN PART the motion.[2] The Court GRANTS the motion with leave to amend as to claims one, three, four, and five, and DENIES it as to claim two. The Court will not reach the issue of the state claims at this time. Plaintiff may include the state claims in any amended complaint if it believes they are still viable given Defendant's challenges to them.

## II.     KEY FACTUAL ALLEGATIONS

The following are the key allegations in the FAC. Vizio and Funai both manufacture digital televisions and receivers for distribution in the United States. FAC ¶ 10. Thomson Licensing S.A. ("Thomson") was issued a collection of patents relating to the transmission, receipt, and use of specific program information in a digital broadcast signal. FAC ¶¶ 17-18. In 1997, the Advanced Television Systems Committee ("ATSC")—a private standard-setting organization—adopted the "A/65" standard for digital television broadcast signals. FAC ¶¶ 6, 13, 17. During ATSC's standard-setting process, Thomson designated several of its patent claims as essential to the A/65 standard, including United States Patent Nos. 6,115,074 (the "'074 patent") and 6,111,611 (the "'611 patent"). FAC ¶¶ 17-19. Pursuant to the ATSC's patent policy, Thomson provided a written agreement to the ATSC, which specified that it would license its essential patents on fair, reasonable, and nondiscriminatory ("FRAND") terms.[3] FAC ¶¶ 16, 19, Exs. A & C. The Federal Communications Commission ("FCC") has since adopted major elements of the ATSC standards, including the A/65 standard. FAC ¶ 20. All broadcast televisions sold in the United States must now be compatible with these standards. FAC ¶ 21.

On September 30, 2007, Thomson assigned to Funai all of its rights in two of its patents involved in the A/65 standard—the '074 patent and United States Patent No.

---

[2]Docket No. 56.

[3]FRAND committments are not required by law, but are required by the standard-setting organizations (like ATSC) before they will issue a standard that requires the utilization of a patent. *See* ATSC's Patent Policy, FAC, Ex. A at ¶ 1(b).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0174 AHM (RCx) | Date | February 3, 2010 |
|---|---|---|---|
| Title | VIZIO, INC. v. FUNAI ELECTRIC CO., LTD. | | |

5,329,369 (the "'369 patent"). FAC ¶ 25. Thomson did not assign—to anyone—its rights to the '611 patent. *Id.* Thus, digital television manufacturers have been required to license both Thomson's '611 patent and Funai's '074 patent. FAC ¶¶ 28-29. Vizio alleges that before selling its '074 patent to Funai, Thomson licensed its multiple patents as a package and a licensee could purchase rights to use the technology by entering into a license agreement with Thomson alone, although Thomson "was constrained from exercising monopoly power by the FRAND commitment it had made to the ATSC." FAC ¶¶ 26-27. Vizio characterizes Funai as demanding a duplicative royalty from its competitors for use of the '074 patent.

Both Thomson and Funai have charged royalties for every digital television sold in the United States—Funai at much higher rates than those specified in Thomson's FRAND commitment. FAC ¶¶ 33, 59-60. Vizio alleges that Thomson and Funai conspired to charge rates in excess of Thomson's FRAND commitments and then split the profits. FAC ¶¶ 51, 56. In addition, Funai has sought an exclusion order to prohibit the importation of allegedly infringing products. FAC ¶ 32. Vizio also alleges that Funai has interfered with its business relationships by making deceptive and malicious statements to its customers about Vizio's products infringing on Funai's '074 patent. FAC ¶¶ 39-43.

Vizio, meanwhile, has developed its own "work-around" technology, which receives an A/65 broadcast signal but does not assemble that signal to form a channel map. *See* Opp'n at 5, Vizio's Request for Judicial Notice, Ex. A. Vizio and Funai are still involved in litigation as to whether this work-around technology infringes Funai's patent, but the United States Customs and Border Protection Service recently ruled that such technology does not infringe on the '074 patent and may not be enjoined from importation. Vizio's Request for Judicial Notice, Ex. A.

### III.  LEGAL STANDARD FOR A MOTION TO DISMISS

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, the allegations of the complaint must be accepted as true and are to be construed in the light most favorable to the nonmoving party. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Thus,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0174 AHM (RCx) | Date | February 3, 2010 |
|---|---|---|---|
| Title | VIZIO, INC. v. FUNAI ELECTRIC CO., LTD. | | |

if the complaint states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory, the complaint should not be dismissed. *Haddock v. Bd. of Dental Examiners*, 777 F.2d 462, 464 (9th Cir. 1985).

Federal Rule of Civil Procedure 8(a)(2) requires

> only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" . . . While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . ., a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

"Two working principles underlie . . . *Twombly*." *Ashcroft v. Iqbal* __ U.S. __, 129 S. Ct. 1937, 1949 (2009). "First, the tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1949-50. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* at 1949. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0174 AHM (RCx) | Date | February 3, 2010 |
|---|---|---|---|
| Title | VIZIO, INC. v. FUNAI ELECTRIC CO., LTD. | | |

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. . . . However, material which is properly submitted as part of the complaint may be considered" on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss without converting the motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). If the documents are not physically attached to the complaint, they may be considered if their "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998). Furthermore, under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record." *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). "The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading." 5C Wright & Miller, *Fed. Prac. & Pro.* § 1363 (3d ed. 2004).

Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

## IV. DISCUSSION

Vizio brings five claims under federal antitrust law: (1) unlawful acquisition in violation of Section 7 of the Clayton Act ("Section 7"), 15 U.S.C. § 18; (2) unlawful conspiracy in violation of Section 1 of the Sherman Antitrust Act ("Section 1"), 15 U.S.C. § 1; (3) unlawful monopolization in violation of Section 2 of the Sherman Antitrust Act ("Section 2"), 15 U.S.C. § 2; (4) unlawful attempt to monopolize in violation of Section 2 of the Sherman Antitrust Act; and (5) unlawful conspiracy to monopolize in violation of Section 2 of the Sherman Antitrust Act. Funai attacks all of Vizio's antitrust claims on three grounds—that in each claim Vizio has failed to plead harm to competition, that it has alleged an inadequate market definition, and that its

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0174 AHM (RCx) | Date | February 3, 2010 |
|---|---|---|---|
| Title | VIZIO, INC. v. FUNAI ELECTRIC CO., LTD. | | |

allegations of market power are deficient.[4]

### A.   Harm to Competition

> 1.  The Clayton Section 7 unlawful acquisition and Sherman Section 2 unlawful monopolization claims (Claims 1 and 3)

Vizio alleges that Funai has undertaken the following actions that it claims constitute a sufficient pleading of harm to competition: 1) acquiring the '369 and '074 patents from Thomson; 2) enforcing the '074 patent concurrently with Thomson's '611 patent so that digital television manufacturers have to pay royalties to both Funai and Thomson; 3) filing a patent enforcement action in the International Trade Commission ("ITC") to prevent importation of digital televisions covered by the '074 and '369 patents; 4) repudiating Thomson's FRAND commitment and charging users of the '074 patent technology a price that exceeds that under the FRAND commitment; and 5) interfering with Vizio's business relationships with its suppliers, customs broker, and customers.  FAC ¶¶ 24-43.

Funai argues that these allegations are insufficient to plead harm to competition as required by both of the federal antitrust statutes under which Vizio brings suit.  *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) (holding a plaintiff must allege harm "to the competitive process," *i.e.*, to competition itself, for claims under the Sherman Act); *Brown Shoe Co., Inc. v. United States*, 370 U.S. 294, 320 (1962) (finding that the relevant harm under Section 7 of the Clayton Act is to competition, not competitors).

Funai argues that the transfer of the patents from Thomson to Funai, and the consequential alleged monopolization by Funai, cannot harm the competitive process because the transfer was merely a lawful shift of market power from the hands of one

---

[4] Funai attacks Vizio's three claims under Section 2 (claims three, four, and five) on two additional grounds—that they rest on the defective "shared monopoly" theory and that Vizio failed to plead anticompetitive conduct.  The Court, however, need not reach these issues, as the Section 2 claims fail on other grounds, namely failing to allege a harm to competition.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0174 AHM (RCx) | Date | February 3, 2010 |
|---|---|---|---|
| Title | VIZIO, INC. v. FUNAI ELECTRIC CO., LTD. | | |

company to another. The Court agrees. Although harm to competition can arise from obtaining a patent by fraud, *Walker Process Equipment, Inc v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174 (1965) (holding that "the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act"), the transfer of a valid patent "has no antitrust significance," but "merely shifts a lawful monopoly into different hands." *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 266 (7th Cir. 1984) (holding that no harm to competition resulted when one rival applicant obtained a valid patent monopoly rather than another because the patent monopoly would exist either way); *see also, Columbia River People's Utility Dist. v. Portland General Elec. Co.*, 217 F.3d 1187, 1190-91 (9th Cir. 2000) (citing *Brunswick* favorably on this point and holding that determining which party would be a state-approved monopolist for an electrical plant had no antitrust significance because the monopoly would exist either way). Vizio alleges that before Funai's acquisition of the '074 and '369 patents and its alleged agreement with Thomson, Thomson "had some ability to control the price of licensing the technology in question, but that control was strictly limited by Thomson's FRAND commitment to the ATSC." FAC ¶ 53. Moreover, Vizio alleges that Funai did not have market power prior to the patent acquisition. *Id.* Thus, Vizio does not allege a consolidation of competition in which one firm that already had a sizeable share of the market acquired additional market power. Moreover, the patent—and therefore the market power deriving from it—existed prior to the transfer. *See* FAC ¶¶ 26-27. Because the challenged conduct did not create or cause monopoly power in Funai's hands, Vizio has failed to allege a harm to *competition* arising from the transfer of the patent or from Funai's holding of the patent.

As to Vizio's allegation that Funai sought to enforce the '074 and '369 patents against Vizio and other manufacturers, enforcing a patent does not constitute harm to competition unless the enforcement action is brought in bad faith. *See Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979) (holding that, although the prosecution of patent enforcement actions in bad faith may violate antitrust laws, the district court erred in not instructing the jury that a patentee's infringement suit is presumptively in good faith and the presumption can be rebutted only by clear and convincing evidence). Here, Vizio has not alleged that the enforcement action Funai filed with the International Trade Commission was brought in bad faith, FAC ¶ 32, so this allegation is insufficient to plead harm to competition.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0174 AHM (RCx) | Date | February 3, 2010 |
|---|---|---|---|
| Title | VIZIO, INC. v. FUNAI ELECTRIC CO., LTD. | | |

Nor does the allegation that Funai repudiated Thomson's FRAND commitments constitute a harm to competition. Vizio cites to the *Broadcom* and *Research in Motion* cases for the proposition that deceiving a standard setting organization and then evading FRAND commitments can qualify as anticompetitive conduct and can constitute harm to competition. *See Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 313-14 (3d Cir. 2007) (holding that a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms, coupled with a standard setting organization's reliance on that promise, and the patent holder's subsequent breach of that promise, constitutes actionable anticompetitive conduct); *Research in Motion Ltd. v. Motorola, Inc.*, 2008 WL 5191922 at *4-7 (N.D. Tex. Dec. 11, 2008) (holding that a refusal to license on agreed-to FRAND terms constitutes a harm to competition). However, other courts have reached the opposite conclusion. *See Rambus v. Federal Trade Commission*, 522 F.3d 456, 467 (D.C. Cir. 2008) (holding that deceiving a standard-setting organization, thereby avoiding FRAND (there called "RAND") limits on licensing fees, did not constitute a harm to competition under the Sherman Act).

The court in *Rambus* explained that, even in the context of FRAND licensing agreements, "an otherwise lawful monopolist's end-run around price constraints, even when deceptive or fraudulent, does not alone present a harm to competition in the monopolized marked." *Rambus, 522 F.3d at 466*. The *Rambus* court cited *NYNEX v. Discon, supra,* for that proposition, after observing previously that "to the extent [the *Broadcom* ruling] may have rested on a supposition that there is a cognizable violation of the Sherman Act when a lawful monopolist's deceit has the effect of raising prices (without an effect on competitive structure), it conflicts with *NYNEX*." *Id.* (citing *NYNEX*, 525 U.S. 128). As discussed above, Vizio has not explained how the mere transfer of a valid patent from Thomson to Funai created an unlawful monopoly, and so its alleged conduct does not constitute a harm to competition.

Moreover, in both *Broadcom* and *Research in Motion* the antitrust defendant itself had entered into a FRAND obligation with the standard setting organization. Here, Vizio's only allegation that suggests that Funai has any obligations to the ATSC is its conclusory statement that "[w]hen Funai acquired Thomson's rights to the '074 patent, specific encumbrances attached to that patent, including Thomson's obligation to license the '074 patent to implementers of the ATSC standards, such as Vizio, on a FRAND

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0174 AHM (RCx) | Date | February 3, 2010 |
|---|---|---|---|
| Title | VIZIO, INC. v. FUNAI ELECTRIC CO., LTD. | | |

basis." FAC ¶ 30. However, Thomson—not Funai—participated in the standard-setting process and entered into the FRAND agreement with the ATSC. FAC ¶¶ 14, 16, 18-19, Ex. C. And, as the FAC alleges, the ATSC Patent Policy requires only that *participants* provide a written agreement to license on FRAND terms. FAC ¶ 16. Although the allegations might suffice to state an antitrust claim against Thomson under the holding in *Broadcom*, they do not against Funai.

Based on this analysis, Vizio's claims of unlawful monopolization under Section 2 of the Sherman Act—claims three through five—and unlawful acquisition under Section 7 of the Clayton Act—claim one—must fail.

2. The unlawful conspiracy claim

With respect to the conspiracy claim under Section 1 of the Sherman Act—claim two—the Court reaches a different result. The Section 1 claim does not rest solely on Funai's acquisition of the '074 patent. Vizio also alleges that "Thomson and Funai shared a commitment to a common scheme to circumvent Thomson's FRAND commitment to the ATSC by agreeing that Funai would collect a second royalty for the same technology, and to share the proceeds of that second royalty between Thomson and Funai . . . ." FAC ¶ 67; *see also id.* at ¶¶ 51, 56. In *United States v. Line Materials Co.*, the Supreme Court addressed a horizontal price-maintenance and cross-licensing agreement between three patentees that held three electrical circuit patents. 333 U.S. 287, 290-91 (1948); *see also United States v. Westinghouse Electric Corp.*, 648 F.2d 642, 647 (9th Cir. 1981) (citing *Line Materials* in dicta for the proposition that a patent holder may violate antitrust laws through an agreement among patent holders to set prices). In *Line Materials*, the inventions protected by two of the patents were both required in order to form a fully functional dropout fuse cutout. (Here, Vizio alleges that both the '074 and '611 patents are required to form an A/65 compliant digital television chip.) The Supreme Court held that "when patentees join in an agreement . . . to maintain prices on their several products, that agreement, however advantageous it may be to stimulate the broader use of patents, is unlawful per se under [Section 1 of] the Sherman Act." *Id.* at 314. The Court reasoned, "[w]here two or more patentees with competitive, non-infringing patents combine them and fix prices on all devices produced under any of

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0174 AHM (RCx) | Date | February 3, 2010 |
|---|---|---|---|
| Title | VIZIO, INC. v. FUNAI ELECTRIC CO., LTD. | | |

the patents, competition is impeded to a greater degree than where a single patentee fixes prices for his licensees." *Id.* at 311. Here, as in *Line Materials*, two patents are both essential to form a fully functional device, and Vizio has alleged that Funai and Thomson agreed to fix prices by charging a second royalty for the '074 patent (in addition to Thomson's royalty on the '611 patent) and splitting the profits. FAC ¶ 67; *see also id.* at ¶¶ 51, 56. Thus, Vizio has pled harm to competition on its Section 1 conspiracy claim (claim two), and this claim survives the motion to dismiss.

### B. Market Definition and Market Power

Funai also argues that Vizio's definition of the "upstream" technology market is defective and that its allegations of market power in both the "upstream" technology market and the "downstream" market for digital televisions are inadequate.

Vizio defines the upstream technology market as the "market for the licensing of technology used to receive and utilize an A/65-compatible digital television broadcast signal." FAC ¶ 44. Funai argues that this definition is inadequate because it fails to encompass all economic substitutes for the product, particularly Vizio's work-around technology. *See Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008) (holding that the definition of a "market must encompass the product at issue as well as all economic substitutes for the product"). Funai is incorrect, because as the Court reads this definition, it includes all technology that could be used to receive and utilize an A/65-compatible digital television broadcast signal, which would include the work-around technology.

Funai is also incorrect that Vizio has not alleged sufficient facts to constitute direct evidence of market power. Vizio alleges that Funai has increased prices to supracompetitive levels and has excluded other companies from using A/65-compatible technology through blocking importation of competing products. *See* FAC ¶¶ 33, 50, 53-54, 57, 59, 63, 75, 81, 86. Funai argues that Vizio's allegations of market share (i.e., proportion of the market held by Funai) are inadequate. However, market power need not be proved through indirect evidence of market share. Market power may also be proven through direct evidence, such as supracompetitive prices and restricted output. *See Rebel Oil Co. v. Altantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995)

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0174 AHM (RCx) | Date | February 3, 2010 |
|---|---|---|---|
| Title | VIZIO, INC. v. FUNAI ELECTRIC CO., LTD. | | |

(explaining in ruling on a motion for summary judgment that market power may be demonstrated either through "evidence of restricted output and supracompetitive prices" which constitute "direct proof of the injury to competition" or through "circumstantial evidence pertaining to the structure of the market," including market share).  Because Vizio alleges that Funai has increased prices to supracompetitive levels and has excluded other companies from using A/65-compatible technology through blocking importation of competing products, its allegations are sufficient to plead market power.

## V.     CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss.  The Court GRANTS the motion to dismiss, with leave to amend, as to counts one, three, four, and five and DENIES the motion as to count two.
/ / /

/ / /

No hearing is necessary.  Fed. R. Civ. P. 78; L. R. 7-15.

This Order is not intended for publication or for inclusion in the databases of Westlaw or LEXIS.

|  | : |  |
|---|---|---|
| Initials of Preparer | | SMO |